FILED

2008 Jan-16  PM 02:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JIM WALTER RESOURCES, INC. | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 7:05-CV-01338-LSC |
| | ] | |
| DOWNARD LONGWALL, INC., *et al.,* | ] | |
| | ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration Defendant Downard Hydraulics, Inc.'s

Motion for Summary Judgment (Doc. 66), filed on September 21, 2007; and

Defendant Downard Longwall, Inc.'s Motion for Summary Judgment (Doc.

68), filed on September 21, 2007.   Plaintiff Jim Walter Resources, Inc.

("JWR") has sued Downard Hydraulics, Inc. ("Hydraulics") and Downard

Longwall, Inc. ("Longwall") for negligence, breach of contract, and breach

of warranty. (Doc. 22.)  Defendants have moved for summary judgment on

all of Plaintiff's claims.  The issues raised in Hydraulics's and Longwall's

motions for summary judgment have been briefed by the parties and are

now ripe for consideration.  Upon full consideration of the legal arguments and evidence presented, Hydraulics's motion is due to be granted in its entirety.  Longwall's motion is due to be granted on Plaintiff's negligence claims, but is due to be denied on Plaintiff's claims of breach of contract and breach of warranty.

II.    Facts.[1]

JWR is in the business of mining coal, and operates an underground coal mine referred to as the No. 7 Mine.  (Doc. 22.)  In operating its business, JWR uses a longwall system, which consists of a number of shields, to mine coal.  (Docs. 22, 66 & 70.)  The longwall shield consists of a hydraulic roof support with two legs that connect to a base and overhead canopy, and provides overhead support and protection for miners.  *Id*.  The amount of pressure in each leg of the longwall shield is controlled by a valve known as a pilot operated check valve ("POCV").  *Id*.

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

In October of 2003, JWR decided to replace all leg POCVs and leg yield valves in order to avoid a mechanical failure during the operation of the mine, and contacted Don Downard ("Downard") to obtain a quote on the replacement of all of these valves.  *Id.*  JWR provided Downard with an old valve, a Gullick valve, along with a Gullick parts drawing as an exemplar to use in the manufacturing of the new valves, stating that the new valves needed to function the same as the old valves.  *Id.*

On October 15, 2003, Downard, on behalf of Longwall, submitted a quote to Chris Bishop of JWR for the replacement of 364 leg POCVs and leg yield valves.  *Id.*  The quote stated that the "quote and any orders resulting therefrom are subject to our standard terms and conditions." (Longwall's Price Quotation; Downard Aff. Ex. A.)  One condition stated in the terms and conditions provided:

> No terms and conditions contained in any order placed with the seller, other than those stated herein, and no agreement or other understanding in anyway modifying the terms and conditions herein shall be binding on the seller, unless hereinafter made in writing and signed by its authorized representative.  The terms herein supersede any conflicting terms and conditions of buyer, any statement in its terms notwithstanding.

(Longwall's Terms & Conditions; Downard Aff. Ex. B.)  The valves were to be manufactured by SHR Schulze-Heiming GmbH ("SHR"), a German company.  (Docs. 22, 66 & 70.)  On October 27, 2003,[2] JWR accepted Longwall's quote by way of purchase order, which stated that the purchase order constitutes a binding contract "upon the terms and conditions herein when accepted by Seller either by acknowledgment or commencement of shipment."  (Doc. 73 Exs. E & F.)

On December 13 and 31, 2003 and January 12 and 29, 2004,  Longwall delivered the valves along with delivery tickets to JWR, which stated that "[a]ll goods and/or services are sold or furnished subject to our standard terms and conditions."  (Sergent Dep. Exs. 6-10.)

In February of 2004, the leg POVCs and leg yield valves were installed in the longwall system of the No. 7 Mine.  (Doc. 22.)  JWR alleges that shortly after the POCVs were installed, the valves began to fail.  (Docs. 22,

---

[2]On October 27, 2003, JWR submitted a Purchase Order to Hydraulics, stating that the purchase order constitutes a binding contract "upon the terms and conditions herein when accepted by Seller either by acknowledgment or commencement of shipment." (Doc. 73 Exs. E & F.)  On January 9, 2004, JWR reissued the purchase order, changing the vendor's name from Hydraulics to Longwall.  (Sergent Dep. at 27-29; Sergent Dep. Ex. 1.) Regardless of whether the October 27, 2003 or January 9, 2004 date is used, the outcome remains the same.

66 & 70.)

As a result of the failure of the valves, JWR asserts claims against Longwall and Hydraulics, alleging negligence, breach of contract, and breach of warranty.  (Doc. 22.)

III.    Standard of Review.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the

court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). However, judges are not "required to submit a question to a jury merely because some evidence has been introduced by a party having the burden of proof, unless the evidence be of such character

that it would warrant the jury finding a verdict in favor of that party." *Id.* at 251 (*quoting Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1872)).  "This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250.

IV.   Discussion.

The complaint alleges breach of contract, breach of warranty, and negligence.  Defendants Hydraulics and Longwall each contend that they are entitled to summary judgment on all claims.  The Court addresses each claim with regard to each party below.

A.    Hydraulics.

Hydraulics contends that summary judgment is due to be granted on JWR's claims of breach of contract, breach of warranty, and negligence.[3]

1.    Breach of Contract.

Hydraulics contends that it was not a signatory to a contract between

---

[3]*See infra* Section C for the discussion on both Defendants' motions for summary judgment on JWR's negligence claims, establishing that summary judgment is due to be granted in favor of both Defendants.

JWR and Longwall nor did it sell the POCVs to JWR; therefore, Hydraulics argues that summary judgment is due to be granted.  (Doc. 66.)

In Alabama, it is well settled that "one not a party to, or in privity with a contract," cannot sue or be sued for its breach.  *Dunning v. New England Life Ins.*, 890 So. 2d 92, 97 (Ala. 2003)(quoting *Twine v. Liberty Nat'l Life Ins. Co.*, 311 So. 2d 299, 305 (1975)).  The term "privity" indicates a mutual, legally recognized interest in the contract.  *See Watson v. Mills*, 153 So. 2d 612, 614 (Ala. 1963).

In this case, it is obvious that Hydraulics was not in "privity of contract" with JWR for the sale of the leg POCVs.[4]  When the parties started contracting for the sale of the leg POCVs and leg yield valves, it was Longwall that sent the offer to JWR.  In response, JWR issued a purchase order accepting the offer, indicating Hydraulics as the seller.  However, in January, pursuant to the request of Downard, JWR reissued the purchase

---

[4]JWR and Hydraulics may be found to be in privity of contract for the post-failure repair work.  However, in JWR's allegations, it states that the defendants "breached the contract of sale by supplying equipment that was faulty, defective and not previously inspected and tested to make sure said equipment was in proper working order."  (Doc. 22.)  Since Hydraulics was not a party to the contract of sale and did not supply the valves, Hydraulics cannot be found to be in privity of contract with JWR for JWR's allegation of breach of contract.

order indicating Longwall as the proper seller.[5]  (Sergent Dep. at 91-92.)

In entering into a contract, when parties agree on the terms, but mistakenly

prepare a document which incorrectly reflects the agreement, the parties

may correct the contract as to reflect the agreed upon contract.  *See Mobile*

*Elec. Co. v. City of Mobile*, 79 So. 39, 40 (Ala. 1918).  Under contract law,

there is not sanctity to a written contract and parties may amend or correct

the writing by mutual agreement.  Parties may even substitute another

party for one of the parties to the contract as long as there is consent to do

so.  *See Baker v. Green*, 84 So. 545, 546 (Ala. Ct. App.1919)(while the

original contract was between Green and Young, Young was unable to

provide Green with an aviator and indorsed the contract providing that

Baker would furnish an aviator for Green; therefore, there was a

---

[5]Plaintiff contends that it had no reason to know that Longwall and Hydraulics were separate entities, and that Hydraulics is a proper party to sue. (Doc. 76.) Plaintiffs base this on the fact that when JWR dealt with these companies, JWR referred to the companies as one entity, "Downard." *Id.; see also* (Kozel Dep. at 15, 18, 54-55; Bishop Dep. at 118.)  However,  the general manager of purchasing and materials control for JWR, Rick Sergent, who signed the original purchase order, stated that he had been informed prior to October 2003 that Longwall and Hydraulics were two separate entities prior to the transaction in this case.  (Sergent Dep. at 31-32.)  Regardless of whether JWR referred to the two companies as one, the evidence presented indicates that the contract which is a basis of this suit was between JWR and Longwall; therefore, Hydraulics is not a proper party to sue for breach of contract.

substitution of the parties, and the court held that when Green accepted Baker's performance, the contract had been modified as to make Baker a party to the contract thereby entitling him to sue).[6]  When the parties change the agreement by mutual consent, the revised contract takes the place of the old contract and consists of the changed provisions and any of the unchanged provisions in the original contract.  *See Mobile Elec. Co.*, 79 So. at 40.  Further, when a contract is modified by subsequent agreement, suit must be brought on the modified contract, not the original.  *See id.*; *see also Long v. Shepherd*, 48 So. 675 (Ala. 1909)(stating that a third party or a court cannot hold the contracting parties to the original contract, but must rely on the subsequent contract).

Here, while the original purchase order created by JWR was sent to Hydraulics, JWR corrected the purchase order as to reflect the proper party, Longwall.  The corrected purchase order acts as a modification to the original contract thereby substituting Longwall for Hydraulics as the seller

---

[6]*See also Rape v. Lyerly*, 208 S.E.2d 712 (N.C. Ct. App. 1974)(holding that parties may be substituted in a contract when the parties do not object and fully acquiesce in accepting the goods from the substituted party); *Niblett Farms v. Markley-Bankhead, Inc.*, 13 So. 2d 287 (La. 1943)(stating that a party may be substituted for an original party to the contract with the consent of both parties).

of the POCVs.  With regard to the mutual consent needed to modify the contract, the evidence establishes that both parties consented to this change since Downard requested the change and since JWR subsequently sent a revised purchase order and accepted the POCVs from Longwall when they were delivered.  *See Rape*, 208 S.E.2d 712 (where the parties did not object and accepted the products from the substituted party, the court held that the contract was modified as to substitute the party).  Since the modified contract indicated Longwall as the seller of the POCVs, the new contract was between JWR and Longwall.  Hydraulics was no longer a party to the contract for the sale of the POCVs nor did it have a legally recognized interest in the contract.  *See Dunning*, 890 So. 2d at 97; *Watson*, 153 So. 2d at 614.  Thus, JWR was not in privity of contract with Hydraulics and cannot sue Hydraulics for its breach.  Therefore, summary judgment is due to be granted in favor of Hydraulics on Plaintiff's breach of contract claim.

      2.    Breach of Warranty.

Under the Alabama Commercial Code, the sections dealing with warranties place the obligations arising from these warranties only on the *seller* of the goods.  *See* ALA. CODE §§ 7-2-313 to -315 (1975).  In a breach of

warranty case, there is no right of action on a warranty theory against a party for direct economic loss without privity of contract, which arises from the seller/buyer relationship.[7]  *See Rhodes v. General Motors Corp.,* 621 So. 2d 945, 947 (Ala. 1993)(citing *Wellcraft Marine v. Zarzour*, 577 So. 2d 414, 419 (Ala. 1990))(stating that a plaintiff does not have a "right of action on an implied warranty theory against a *manufacturer* for property damage without privity of contract"); *see also Johnson v. Anderson Ford, Inc.*, 686 So. 2d 224, 227 (stating that the absence of privity of contract that arises out of seller/buyer relationship "is fatal to implied warranty claim under" Alabama's version of the U.C.C.); *Barre  v. Gulf Shores Turf Supply, Inc.,* 547 So. 2d 503, 504 (Ala. 1989)(stating that plaintiff must establish privity of contract in an action on an express warranty).

In this case, Longwall was the seller, not Hydraulics.  The evidence presented of the transaction for the POCVs indicates that the contractual relationship was created between JWR and Longwall, and that Hydraulics was not a party to the contract.  Since Hydraulics was not a party to the

---

[7]JWR alleges only economic damages in the form of damage to the valves and to the mining operation; therefore, JWR has the burden of establishing privity of contract in order to recover for breach of warranty.

contract of sale, JWR and Hydraulics were not in privity of contract; therefore, JWR does not have a cause of action against Hydraulics for breach of warranty, and summary judgment is due to be granted in favor of Hydraulics as to Plaintiff's claim for breach of warranty.

B.    Longwall.

Longwall contends that summary judgment is due to be granted on JWR's claims of breach of contract,[8] breach of warranty, and negligence.[9]

---

[8]With respect to the breach of contract claim, while Longwall has filed a summary judgment motion on all claims, Longwall has failed to develop its position as to why summary judgment should be granted on the breach of contract claim with respect to Longwall's liability under this claim and has failed to provide any authority supporting its position.  Longwall argued that the terms and conditions limit the remedies available to JWR; however, Longwall has made no effort to establish that it is not liable for breach of contract.  Since Longwall has not elaborated on its position or provided legal authority to support its position, this Court will not address this issue.  *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 (11th Cir. 2007)(where appellants argued that the SSA acted arbitrarily and capriciously but did not provide legal authority to support their argument or elaborate upon their argument, the court stated that it would "not address this perfunctory and underdeveloped argument"); *see also Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court). Thus, summary judgment is due to be denied as to Longwall's liability for the  breach of contract claim.  However, Longwall has asserted that in the event that it is liable for a breach of contract claim, the damages should be limited.  As discussed below, this Court finds that, in the event Longwall is liable for breach of contract, partial summary judgment is due to be granted as to the damages issue, and JWR is not entitled to recover consequential, special, or incidental damages.

[9]*See infra* Section C for the discussion on both Defendants' motions for summary

In Alabama, contract law requires a court to enforce an unambiguous, lawful contract, as it is written.  *Drummond Co., Inc. v. Walter Industries, Inc.*, 962 So. 2d 753, 780 (Ala. 2006).  Under the Alabama Commercial Code, merchants can form a contract even if the offer and acceptance contain terms that do not mirror each other.  *See* ALA. CODE §§ 7-2-201, 7-2-207 (1975).  Here, it is undisputed that Longwall and JWR entered into a valid contract–-the question is--what terms are a part of the agreement.

Alabama Commercial Code Section 7-2-207 [U.C.C. § 2-207] provides:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
(a) The offer expressly limits acceptance to the terms of the offer;
(b) They materially alter it; or
(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
(3) Conduct by both parties which recognizes the existence of a

---

judgment on JWR's negligence claims, establishing that summary judgment is due to be granted in favor of both Defendants.

contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this title.

ALA. CODE § 7-2-207(1975)[hereinafter 2-207].[10]

Section 2-207 was intended "to alter the 'mirror' rule of common law, requiring the terms of the offer and acceptance to be identical, or to mirror each other." *Burbic Contr. Co., Inc. v. Cement Asbestos Products Co.*, 409 So. 2d 1, 4 (Ala. 1982)(citing *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161,1165-66 (6th Cir. 1972)).  This section recognizes that in commercial settings, the terms of the offer and acceptance will rarely be identical.[11]

---

[10]Courts have had trouble interpreting U.C.C. § 2-207, and this Section has been described as "a murky bit of prose," "not too happily drafted," and "one of the most important, subtle, and difficult in the entire Code, and well it may be said that the product as it finally reads is not altogether satisfactory." *Burbic Contr. Co., Inc. v. Cement Asbestos Products Co.*, 409 So. 2d 1, 4 (Ala. 1982); *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161,1165-66 (6th Cir. 1972); *Southwest Engineering Co. v. Martin Tractor Co.*, 473 P.2d 18, 25 (1970); *Roto-Lith Ltd. v. F.P. Bartlett & Co.*, 297 F.2d 497, 500 (1st Cir. 1962); DUESENBERG & KING, SALES AND BULK TRANSFERS UNDER THE UNIFORM COMMERCIAL CODE § 3.03, at 3-12 (1969).

[11]In *Dorton v. Collins & Aikman Corp.*, the Court stated:

[U]nder the current "battle of the forms," each party typically has a printed form drafted by his attorney and containing as many terms as could be envisioned to favor that party in his sales transactions. Whereas under common law the disparity between the fineprint terms in the parties' forms would have prevented the consummation of a contract when these forms

*See id.*

Under Section 2-207(1), a contract can be found to exist even if the acceptance contains "additional or different terms from the offer  . . . unless acceptance is expressly made conditional on assent to the additional or different terms."  ALA. CODE § 7-2-207(1).  The conditional acceptance provision of Section 2-207(1)  "was intended to apply only to an acceptance which clearly reveals that the offeree is unwilling to proceed with the transaction unless he is assured of the offeror's assent to the additional or different terms therein."  *Cosden Oil & Chemical Co. v. Karl O. Helm Aktiengesellschaft*, 736 F.2d 1064, 1075 (5th Cir. 1984)(citing *Dorton*, 453 F.2d at 1168).  When a contract between merchants is recognized under Section 2-207(1), any additional terms in the acceptance are treated as "proposals for addition to the contract;" and come into the contract unless the offer is conditional on the terms of acceptance, the additional terms materially alter the contract, or notification of objection to the terms is

---

are exchanged, Section 2-207 recognizes that in many, but not all, cases the parties do not impart such significance to the terms on the printed forms.

453 F.2d at 1166 (citing 1 W. HAWKLAND, A TRANSACTIONAL GUIDE TO THE UNIFORM COMMERCIAL CODE § 1.0903, at 14, § 1.090301, at 16(1964)).

given.[12]  *See  Burbic Contr. Co., Inc.,* 409 So. 2d at 4; *Dorton*, 453 F.2d at

1166; ALA. CODE § 7-2-207.

Taking into account the analysis and purposes of Alabama Code § 7-2-

207, it will be applied to the present case in order to determine what terms

and conditions apply.[13]   Initially, it is important to determine which

---

[12]When no contract is recognized under Section 2-207 because the acceptance is expressly conditioned on the offeror's acceptance of the additional terms, the transaction is void, unless the parties' conduct indicates that a contract exists.  *See Dorton*, 453 F.2d at 1166; Ala. Code § 7-2-207(1), (3).   When the parties' conduct evidences a contract, the terms are those upon which the writings agree, and all other terms are viewed as proposals.   Ala. Code § 7-2-207(3). In this case, a contract is recognized under Section 2-207(1); however, even if the contract were not recognized under this section, Longwall's and JWR's conduct clearly evidenced a contract since Longwall delivered the valves, and JWR paid for the valves and installed them into the longwall system.

[13]JWR contends that since Longwall's terms and conditions were not attached to the quote, the terms and conditions do not apply.  (Doc. 71.)

A written contract "may incorporate the terms of another document by reference." *Cavalier Mfg., Inc. v. Clarke*, 862 So. 2d 634, 640 (Ala. 2003)(quoting *McDougle v. Silvernell*, 738 So. 2d 806, 808 (Ala. 1999)).   In the event that a contract contains a reference to outside facts and documents, "the same enters therein to the extent that it is pertinent, and the parties are bound thereby." *Ben Cheeseman Realty Co. v. Thompson*, 112 So. 151, 153 (Ala. 1927); *see also Advance Tank & Constr. Co., Inc. v. Gulf Coast Asphalt Co., LLC*, --- So. 2d ----, 2006 WL 253600, *2 (Ala. Feb. 3, 2006)(where Attachment D of the contract expressly incorporated by reference Advance Tank's standard terms and conditions, which contained an arbitration provision, the provision was part of the contract).   Other writings, which are referred to in a written contract "may be regarded as incorporated by the reference as a part of the contract and therefore may properly be considered in the construction of the contract." *Ex parte Dan Tucker Auto Sales, Inc.*, 718 So. 2d 33, 36 (Ala. 1998)(quoting 17A AM. JUR. 2D *Contracts* § 400 (1991))(where the contract between Tucker and Phelps stated that disputes were to be resolved through binding arbitration according to the AAA's Commercial Arbitration Rules, the agreement was found to have incorporated the

document, the purchase order sent by JWR or the quote sent by Longwall,

constitutes the offer and which constitutes the acceptance.[14] Both parties'

_____

language of the Arbitration Rules regarding the resolution of disputes); *Green Springs Assocs., Ltd. v. Green Springs Village, Ltd.*, 577 So. 2d 872, 875 (Ala. 1991)(quoting 17A AM. JUR. 2D *Contracts* § 400 (1964))(where the court held that an October contract was admissible for proving breach of contract because the December certificate incorporated the October contract by reference).

In addition to the fact that the contract and the instrument referred to in the contract will be construed together as the agreement of the parties, a "party to a contract is responsible for reading" the entirety of the contract. *Advance Tank & Constr. Co., Inc.*, 2006 WL 253600 at *5. A party that has the ability to read and understand the contract "will be held to be on notice of all the provisions" referred to in that contract. *First Family Fin. Servs., Inc. v. Rogers*, 736 So. 2d 553, 558 (Ala. 1999). "[H]e who omits to inform himself of such other writing referred to, in so far as it is reasonable and in contemplation of parties to contract, is bound thereby." *Ben Cheeseman Realty Co.*, 112 So. at 153.

In this case, the offer stated that "THIS QUOTE AND ANY ORDERS RESULTING THEREFROM ARE SUBJECT TO OUR STANDARD TERMS AND CONDITIONS." (Longwall's Price Quotation; Downard Aff. Ex. A.) Similar to *Advance Tank*, where the terms and conditions were incorporated by reference even though the manager testified that the terms were not attached to the proposal nor did he ever receive such terms, Longwall's terms and conditions were incorporated into the contract since the front page of the quote expressly stated that the quote and any subsequent orders were subject to Longwall's terms and conditions regardless of the fact that JWR argues that the terms and conditions were not attached nor delivered to JWR. Therefore, even if JWR never read or saw Longwall's terms and conditions, the provisions contained within such terms and conditions were incorporated by reference into the contract and JWR is deemed to be on notice of all of the provisions, making them valid and enforceable. *See Advance Tank & Constr. Co., Inc.*, 2006 WL 253600 at *5-6 (where the court held that the arbitration provision, which was part the manufacturer's proposal was incorporated by reference into the contract with Gulf Coast, was valid and enforceable even if Gulf Coast's manager never read or saw the provision). Thus, JWR is bound by the terms contained in Longwall's terms and conditions.

[14]"The construction of a written document is a function of the court." *Kennedy Elec. Co., Inc. v. Moore-Handley, Inc.*, 437 So. 2d 76, 81 (Ala. 1983)(quoting *Wheeler v. First Ala. Bank of Birmingham*, 364 So. 2d 1190 (Ala. 1978)).

documents seem to suggest that their terms and conditions take precedence, and that the other party must assent to such terms.  For example, Longwall's conditions state that "[n]o terms and conditions contained in any order . . . shall be binding on seller." (Longwall's Terms & Conditions; Downard Aff. Ex. B.)  JWR's terms of purchase state that the purchase order creates a contract when the terms and conditions are accepted by Longwall.  (Doc. 73 Ex. F.)  However, this Court concludes that the price quotation sent by Longwall constitutes the offer.  Longwall's quote was sent in response to a request for a quote on the replacement of all POCVs; stated that Longwall "was pleased to offer;" and contained specific information regarding the quantity, part number, price, time of delivery, and payment terms; therefore, the quote will be deemed the offer.[15]  *See* U.C.C. § 2-201 (stating that in order to constitute an offer for sale, "[t]he only term which must appear is the quantity term"); *Kennedy Elec. Co., Inc.*, 437 So. 2d at 81 (stating that the important terms of the quote

---

[15]In determining whether a price quote constitutes an offer, attention is given to whether "the purported offer uses words of offer, clearly expresses a quantity, or otherwise signifies to the recipient that a bargain may be sealed."  1 WILLISTON ON CONTRACTS § 4:7 (4th ed. 2007).

included the acceptance language, the delivery date, and the limitation of remedies); *Robert Bosch Corp. v. ASC, Inc.*, 195 Fed. Appx. 503, 509 (6th Cir. 2006)(stating that the quotation was an offer since it contained the essential terms of the contract); *Fisher-Price, Inc. v. Safety 1st, Inc.*, 109 Fed. Appx. 387, 392 (Fed. Cir. 2004)(stating that "if a quotation comes in reply to a specific request for an offer, contains language of commitment, or comes after prolonged negotiations, and the quotation contains detailed terms, it may be deemed an offer); *Boydstun Metal Works, Inc. v. Cottrell, Inc.*, --- F. Supp. 2d ----, 2007 WL 2669721 (D.Or. Sept. 7, 2007). This quote was accepted by JWR's purchase order, which stated that it was a confirmation of the order and that the order would hereinafter be called a "contract."[16]  (Doc. 73 Ex. E.)

Viewing JWR's purchase order as the acceptance under Alabama Code § 7-2-207(1), the Court must determine whether the warranty provisions in JWR's purchase orders were in fact "additional to or different from" the

---

[16]In the purchase order, JWR does not object to the terms of the quotation, rather it says that it is a confirmation of the order.  In addition, JWR does not dispute that the quote was an offer, rather JWR contends that since Longwall's terms and conditions were not attached to the quote that JWR's terms therefore took precedence.  (Doc. 71.)

terms of Longwall's offer.   Since there is a written offer and a written

acceptance, the determination can be made by comparing the two forms.

Longwall's terms and conditions contained the following contractual

limitation of remedies:

> 7. <u>WARRANTY</u>: Seller warrants it[s] products to be free from defects in materials and workmanship under normal use and service when used by the original buyer.  This warranty shall not be applicable more than four months after the date of shipment except that when buyer is an Original Equipment Manufacturer and incorporates the products as a component in a machine, the warranty period shall commence upon shipment of the complete machine by buyer or six months after first shipment by seller, whichever is earlier.
>
> Seller must be given an opportunity to make an investigation and inspection of any asserted defects, which must be reported promptly in writing within ten days of discovery but not later than 10 days after expiration of the applicable warranty period. Seller's liability, whether on warranty, contract, negligence or otherwise, shall be limited to repair or replacement of material found by seller to have been defective in material or workmanship, F.O.B. its plant and such action shall not extend the warranty period.  Warranties on equipment and accessories manufactured by others and supplied hereunder are limited to the original manufacturer's warranty.  No warranty shall apply to equipment application or system design unless the seller specifically assumes responsibility therefore in writing upon contracting to perform such service.  In the event that seller is unable for any reason, to correct any warranty claim defects, buyer's sole remaining remedy shall be a refund of the purchase price after the defective equipment is returned to buyer.
> . . .

THE FOREGOING OBLIGATIONS ARE IN LIEU OF ALL TORT LIABILITY, ALL OTHER OBLIGATIONS AND LIABILITIES, AND ALL WARRANTIES OF MERCHANTABILITY OR OTHERWISE, EXPRESSED OR IMPLIED, IN FACT OR BY LAW, AND STATE SELLER'S ENTIRE AND EXCLUSIVE LIABILITY FOR ANY CLAIM OR DAMAGES IN CONNECTION WITH THE SALE OR FURNISHING OF GOODS OR PARTS, THEIR DESIGN, SUITABILITY FOR USE, INSTALLATION OR OPERATION.   SELLER WILL IN NO EVENT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES WHATSOEVER.

(Longwall's Terms & Conditions; Downard Aff. Ex. B.)   JWR's terms and

conditions provide:

Unless otherwise agreed to in writing by the parties, Seller expressly warrants that all goods and/or services ordered to specifications will conform hereto, and to the blueprints or drawings, samples or other description furnished by Purchaser (or, if not ordered to specifications will be fit and sufficient for the purposes intended) and that all goods and/or services will be merchantable, of good material and workmanship and free from defect.  These warranties shall survive acceptance and payment and shall run to Purchaser, its successors, assigns, customers, and the user of the goods and/or services ordered herein and shall not be deemed to be exclusive.

(Doc. 73 Ex. F.)  Here, Longwall's terms and conditions contain a limited

warranty and a limitation of remedies while JWR's terms and conditions

expressly provide for additional warranties and do not contain a limitation

of remedies; therefore, JWR's acceptance contains additional or different

terms.

The Court is faced with the question of whether JWR's acceptance was made conditional on Longwall's assent to the additional or different terms. The acceptance provision appearing in the Terms and Conditions of JWR's Purchase Order states that the order created a binding contract when the terms and conditions were accepted by Seller by acknowledgment or delivery.  (Doc. 73 Ex. F.)  While JWR's use of the language "constitutes a binding contract . . . when accepted by Seller" suggests that the acceptances were conditional to an extent, this language does not suggest that JWR refused to proceed with the transaction unless Longwall assented to the additional or different terms.  *See Dorton*, 453 F.2d at 1168 ("[t]hat the acceptance is predicated on the offeror's assent must be 'directly and distinctly stated or expressed rather than implied or left to inference'"); *Cosden Oil & Chemical Co.*, 736 F.2d at 1075 (stating that an acceptance will only be construed as a conditional acceptance if it "clearly reveals that the offeree is unwilling to proceed" with the transaction unless the offeror assents to the terms); *Constr*. *Aggregates Corp. v. Hewitt-Robins, Inc.*, 404 F.2d 505, 509 (7th Cir. 1969)(where the Seller advised that acceptance was

solely "predicated on the following clarifications, additions or modifications to the order," the court held that the acceptance was expressly made conditional on assent to these additional terms and that this acceptance could be treated as a counter-offer).  Since JWR's purchase orders did not directly and distinctly indicate that JWR's acceptance was predicated on Longwall accepting JWR's terms of purchase or that JWR was unwilling to proceed with the transaction unless Longwall accepted the terms,[17] JWR's acceptance was not expressly conditional on Longwall's assent to any additional or different terms.[18]  *See Dorton,* 453 F.2d at 1168.  A contract between JWR and Longwall will be recognized as one formed under Alabama Code § 7-2-207(1), and any additional or different terms will be treated under  § 7-2-207(2).

---

[17]Not only did JWR not represent that it would not continue with the transaction unless Longwall accepted the terms, JWR went ahead with the transaction as if a contract had been formed.

[18]While this Court does not follow the minority opinion which views this as a conditional acceptance, if this Court were to accept this view, then JWR's purchase order would constitute a conditional acceptance.  However, when Longwall delivered the valves, the valves were accompanied with a delivery ticket, which stated that the goods were subject to Longwall's terms and conditions.  (Sergent Dep. Exs. 6-10.)  This Court finds it interesting that JWR went ahead and paid for the valves without objecting to the terms and conditions.  Therefore, even if this Court were to find that these purchase orders constituted a conditional acceptance, there would be no significant difference in the outcome of the case.

Both JWR and Longwall are "merchants;"[19] therefore, any additional terms will become part of the contract unless the terms materially alter the contract.[20]  *See* ALA. CODE § 7-2-207(2)(b).   However, the text of Alabama Code § 7-2-207(2) refers only to "additional terms" as proposals and does not indicate that different terms are proposals; therefore, the majority of courts have held that additional, but not different, terms become part of the contract if they do not materially alter it, and that different terms never become part of the contract.  *See Reaction Molding Techs., Inc. v. Gen. Elec. Co.*, 588 F. Supp. 1280, 1289 (E.D. Pa. 1984); 1 WHITE & SUMMERS, UNIFORM COMMERCIAL CODE § 1-3 (5th ed. 2007).

In regard to different or conflicting terms, two approaches have been used in analyzing these terms under Section 2-207.  *See* 1 WHITE & SUMMERS,

---

[19]"'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill." ALA. CODE § 7-2-104 (1975).

[20]While some courts considered an expression of acceptance with differing terms as a counter-offer, "this view has been widely discredited as a revival of the common law rule, and the Court is not aware of any jurisdiction in which it is currently in force." *Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F. Supp. 2d 643, 653 (E.D. Pa. 2002). Therefore, both additional and different terms will be handled under Alabama Code § 7-2-207(b).

UNIFORM COMMERCIAL CODE § 1-3.  One view interprets Section 2-207(2)(b) such that the provision contained in the offer controls, and the different term in the acceptance falls out of the contract.  *See id.* (stating that the recipient of the first form had an opportunity to object to any terms to which it did not agree; therefore, any differing terms would not be included); *see also Reaction Molding Techs., Inc.*, 588 F. Supp. at 1289.  Under the other approach, which the majority of courts follow,[21] the two terms cancel one

_____

[21]*Northrop Corp. v. Litronic Indus.*, 29 F.3d 1173 (7th Cir. 1994) (predicts Illinois would say conflicting terms cancel); *McJunkin Corp. v. Mechs., Inc.*, 888 F.2d 481 (6th Cir. 1989); *Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440 (9th Cir. 1986); *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569 (10th Cir. 1984) (the knock-out rule is the only solution to conflicting terms which avoids giving undue advantage to party based on fortuity of timing of his form; forms are rarely read in practice); *Pennsylvania Power & Light Co. v. Joslyn Corp.*, 1988 WL 115773 (E.D. Pa. 1988), aff'd, 875 F.2d 311 (3d Cir. 1989) (conflicting warranties cancel each other out); *Eastern Cement v. Halliburton, Co.*, 600 So. 2d 469, 471 (Fla. Dist. Ct. App. 1992)(the conflicting terms cancel each other out and the contract proceeds under the terms which the parties have agreed); *Owens-Corning Fiberglas Corp. v. Sonic Dev. Corp.*, 546 F. Supp. 533 (D.Kan. 1982)(stating that conflicting terms cancel each other out); *Lea Tai Textile Co., Ltd. v. Manning Fabrics, Inc.*, 411 F. Supp. 1404 (S.D.N.Y. 1975) (conflicting terms regarding rules to be used for arbitration cancel each other); *S.C. Gray, Inc. v. Ford Motor Co.*, 286 N.W.2d 34 (Mich. Ct. App. 1979) (conflicting warranty terms in offer and acceptance cancel each other partly because each objects to other's clause); *In re Chemtoy Corp.*, 19 B.R. 475 (Bankr. N.D. Ill. 1982) (when term in acceptance conflicts with term in offer, they cancel each other); *Challenge Machinery Co. v. Mattison Machine Works*, 359 N.W.2d 232 (Mich. Ct. App. 1984) (conflicting warranty terms cancel each other); *St. Paul Structural Steel Co. v. ABI Contr., Inc.*, 364 N.W.2d 83 (N.D. 1985) (conflicting payment terms cancel each other); *Reeves Bros. v. Capital-Mercury Shirt Corp.*, 962 F. Supp. 408 (S.D.N.Y. 1997) (neither choice of law term enters contract); *Superior Boiler Works, Inc. v. R.J. Sanders, Inc.*, 711 A.2d 628 (R.I. 1998) (bargained for terms agreed upon became part of the contract; different terms as to shipping date cancelled each

another out.[22]  *Id.*  (which bases this conclusion on comment 6 of § 2-207,
which states that if clauses conflict, each party will be assumed to object
to the term and neither term will come in). Therefore, the contract
between the parties will consist of the terms to which both parties expressly
agree, and the contested terms will be supplied by the applicable sections
of the Commercial Code, including standard gap-fillers.

Here, Longwall's price quotation and JWR's purchase order contain
various different and some conflicting provisions.[23]  To begin, Longwall's
terms and conditions provide that "Seller warrants it[s] products to be free
from defects in materials and workmanship under normal use."  In contrast,
JWR's terms and conditions provide that "Seller expressly warrants that all
goods and/or services ordered to specifications will conform thereto, and
to . . . [any] description furnished by Purchaser and that the goods will be

---

other out and the U.C.C. gap filler supplied delivery term); *Steiny & Co. v. Cal. Elec.
Supply Co.*, 79 Cal. App. 4th 285 (Cal. Ct. App. 2000) (different terms cancel);
*Richardson v. Union Carbide Indus. Gases, Inc.*, 790 A.2d 962 (N.J. Super. Ct. App. Div.
2002) (cancel each other); *Reilly Foam Corp.*, 206 F. Supp. 2d 643 (E.D. Pa. 2002)
(different terms in acceptance fell out).

[22]This approach is also referred to as the "knock-out" rule.

[23]*See* Longwall's Terms and Conditions (Downard Aff. Ex. B); JWR's Terms and Conditions
of Purchase (Doc. 73 Ex. F.).

merchantable, of good material and workmanship, and free from defect." Second, Longwall's terms provide that warranties on equipment and accessories manufactured by others "are limited to the original manufacturer's warranty."   On the other hand, JWR's form provides that "all goods" are to be in conformance with applicable specifications, drawings, or other descriptions, and that "all goods" are to be merchantable.  Third, Longwall's terms and conditions contain a contractual limitation of remedies, limiting JWR to repair or replacement of material found by Longwall to have been defective in material or workmanship.[24] JWR's terms contain no such limitation as that contained in Longwall's terms and conditions, but rather expressly provide for warranties.   Further, Longwall's terms provide that these provisions "are in lieu of all tort liability, all other obligations and liabilities, and all warranties of merchantability or otherwise, express or implied."  JWR's terms do not

---

[24]Alabama law "clearly permits" a seller to limit, or exclude by contract, the remedies available.  *See Kennedy Elec. Co., Inc.*, 437 So. 2d at 81 (citing ALA. CODE § 7-2-719(1975)).  When the contract contains a limitation of remedies, a buyer cannot recover damages outside the limited remedies unless the limitation fails of its essential purpose. *See* ALA. CODE § 7-2-319(2); *Burbic Contr. Co., Inc.,* 409 So. 2d at 5.  A "limitation of remedies to repair or replace goods fails in its essential purpose if the seller does not provide goods which conform to the contract within a reasonable time."  *Id.*

conflict with this provision; instead, JWR's terms and conditions are silent as to special, incidental, or consequential damages.

In applying the knock-out rule to the terms in this case, the conflicting terms will cancel each other out.[25]  In regard to the warranties provision, while the warranty that the goods shall be free from defects in materials and workmanship becomes a part of the contract since both JWR and Longwall provide for such a warranty, the express warranty that the goods shall conform to any description is not included in the contract since Longwall excludes express warranties and JWR has expressly provided for such warranty thereby cancelling each other out.  *See Owens-Corning Fiberglas Corp.*, 546 F. Supp. at 538 (stating that Sonic's proposal providing for goods to be of good quality and Plaintiff's warranty that the goods were merchantable conflicted and thus cancelled each other out).  In addition, the parties' terms relating to the warranties on equipment manufactured by others cancel each other out since Longwall limits the warranty to that provided by the manufacturer and JWR expands the warranty provided for

---

[25]This Court will follow the majority approach, and will analyze conflicting terms under the "knock-out" rule.

in the contract to goods manufactured by others; therefore, this provision does not become a part of the contract and any warranty as to such goods will be provided by the Commercial Code.  *See id.* (stating that a limited manufacturer's warranty and a warranty as to all articles conflicted).  With regard to the limitation of remedies to repair or replacement of material, the terms of JWR and Longwall are deemed to conflict since Longwall limits the remedies available under a warranty claim and JWR expressly provides for warranties.[26]  *See Daitom*,  741 F.2d at 1577 (where court inferred that the parties' provisions conflicted, and held that a seller's limitation of a one year statute of limitations for claiming a warranty and a buyer's express warranty knocked each other out making implied warranties available); *Owens-Corning Fiberglas Corp.*, 546 F. Supp. at 538 (where Sonic's proposal contained a limitation that Sonic would only be liable for a period of one year and Plaintiff's form contained no such limitation of warranty, court

---

[26]This Court recognizes that this conclusion requires an inference to be drawn from the construction of JWR's terms; however, this type of inference is consistent with the judicial reluctance to grant summary judgment.  *See Daitom*, 741 F.2d 1569; *Williams v. Borden, Inc.*, 637 F.2d 731, 738 (10th Cir.1980).  While these provisions are deemed to conflict thereby cancelling each provision, the cancelling of the limitation of remedies provision in Longwall's terms and conditions will not affect the outcome of the recovery available in this  case since Longwall's terms also provided for an exclusion of special, incidental, and consequential damages and JWR's terms were silent as to such damages.

held these were conflicting terms).  Finally, in regard to the limitation of

damages provision, the terms of each party do not conflict since JWR is

silent as to such damages; therefore, Longwall's exclusion of such damages

becomes part of the contract.[27]  *See Rotorex Co., Inc. v. Kingsbury*, 42 F.

Supp. 2d 563 (D. Md. 1999)(where Kingsbury's terms and conditions excluded

consequential damages, and Rotorex's terms and conditions were silent,

court held that regardless of the fact that other terms conflicted, the

exclusion of consequential damages prevailed since Rotorex's terms were

silent as to this matter).

Since the writings of the parties conflict as to the warranty provision,

neither party's warranty provision will become part of the contract; instead,

the warranty terms will be supplied by the applicable sections of the

Commercial Code and the Commercial Code gap-filler warranties are

deemed to apply to the contract between JWR and Longwall.  For example,

under Section 7-2-314, an implied warranty that the goods are merchantable

arises.  *See* ALA. CODE § 7-2-314.  In addition, Section 7-2-315 creates an

implied warranty of fitness for a particular purpose.  *See* ALA. CODE § 7-2-

---

[27]*See* discussion *infra* Section IV(B)(3).

315.  This Court will address the question of whether Longwall breached the warranties, and how JWR is limited in its recovery separately in the following subsections.

        1.    Breach of Implied Warranty.

Longwall may be liable for a breach of the implied warranty of merchantability[28] or fitness for particular use.[29]  In an action for a breach of an implied warranty, plaintiff must establish the existence of an implied warranty, the breach of that warranty, and damages resulting from that breach.  *See Storey v. Day Heating & Air Conditioning Co., Inc.*, 319 So. 2d 279, 280 (Ala. Civ. App. 1975)(citing *Geohagan  v. General Motors Corp.*, 279 So. 2d 436 (Ala. 1973)).  When a plaintiff has presented such elements, these elements present factual issues which should be resolved by the jury.

---

[28]Alabama Code Section 7-2-314 provides:
> Unless excluded or modified (Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

Ala. Code § 7-2-314 (1975).

[29]Alabama Code Section 7-2-315 provides:
> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under Section 7-2-316 an implied warranty that the goods shall be fit for such purpose.

Ala. Code § 7-2-315 (1975).

*See id.*   Here, Longwall does not contend that it did not breach these implied warranties, but relies only on the contention that the terms and conditions exclude such warranties; therefore, there is still a question of fact as to whether Longwall breached these implied warranties.  Thus, as to this issue, summary judgment is due to be denied.

       2.     Breach of Express Warranty.

While the contract is deemed not to include an express warranty that the goods will conform to JWR's description, it does contain the express warranty that goods will be free from defect and of good material and workmanship.  Longwall does not provide any support for the fact that the goods were free from defect or that it did not breach this express warranty; therefore, summary judgment, as to this issue, is due to be denied.

       3.     Consequential Damages.

In the event that Longwall is liable for a breach of contract or breach of warranty, Longwall contends that JWR is precluded from recovering consequential damages.  (Doc. 70.)   Longwall's terms and conditions state that Longwall will not be liable for special, incidental, or consequential damages.   JWR's terms are silent as to such damages.   When an offer

contains an express term and the acceptance does not contain a related

term, the acceptance constitutes an acceptance of the offer's term. *See* 1

WHITE & SUMMERS, UNIFORM COMMERCIAL CODE § 1-3; *Cloud Corp. v. Hasbro, Inc.*,

314 F.3d 289, 295 (7th Cir. 2002)(where there was a term concerning

modification in the acceptance, the offeree's silence is not viewed as a

rejection but rather as an acceptance of the term); *Idaho Power Co. v.

Westinghouse Elec. Corp.*, 596 F.2d 924, 927 (9th Cir. 1979)(where

Westinghouse's offer stated that it would not be liable "for special, indirect,

incidental, or consequential damages" and Idaho Power's purchase order

was silent as to this limitation, court held that the disclaimer of such

damages was part of the contract).  Since JWR's terms and conditions are

silent as to consequential, incidental, or special damages, Longwall's

exclusion of such damages constitutes a part of the contract, indicating that

JWR cannot recover such damages.  *See Rotorex Co., Inc.*, 42 F. Supp. 2d

563.

　　Alabama law "specifically allows for a limitation of remedies or

damages." *Fleming Farms v. Dixie Ag Supply, Inc.*, 631 So. 2d 922, 925 (Ala.

1994)(citing ALA. CODE § 7-2-316(4));[30] *see also Puckett, Taul & Underwood, Inc. v. Schreiber Corp.*, 551 So. 2d 979, 983 (Ala. 1989)("[c]ommercial parties may contract freely to limit the remedies available to them"). Under Alabama Code § 7-2-719, an agreement may "limit or alter the measure of damages recoverable." ALA. CODE § 7-2-719(1)(a)(1975). A contract may limit or exclude consequential damages unless the limitation is unconscionable and a limitation where the loss is commercial is not unconscionable. ALA. CODE § 7-2-719(3); *see also Fleming Farms*, 631 So. 2d at 925 (where the court held that the exclusion of consequential damages when the loss was commercial was not unconscionable).

Here, the contract is deemed to contain a limitation of remedies,[31] which excludes special, incidental, or consequential damages, and precludes Seller from being liable for tort actions. Therefore, in the event that Longwall is found liable for breach, JWR is precluded from receiving special,

---

[30]Section 7-2-316(4) provides: "Remedies for breach of warranty can be limited in accordance with the provisions of this article on liquidation or limitation of damages and on contractual modification of remedy (Section 7-2-178 and 7-2-719)."

[31]While the price quotation contained a limitation of remedies, limiting Buyer to repair or replacement of defective goods, this limited remedy is deemed to conflict with the express warranty contained in the acceptance, and therefore does not constitute part of the contract.

incidental, or consequential damages.

For the foregoing reasons, summary judgment is due to be denied as to the breach of warranty and breach of contract claims; however, in the event that Longwall is liable, JWR will not be entitled to recover special, incidental, or consequential damages.

C.    Negligence Claims.[32]

Defendants contend that Plaintiff's claims for negligence should be dismissed because (1) the economic-loss rule precludes recovery, (2) the terms and conditions exclude tort liability, and (3) JWR was contributorily negligent.[33]   (Docs. 66 & 70.)[34]

_____

[32]This analysis of the defendants' motion for summary judgment on the negligence claim is applicable to the negligence claims against both Longwall and Hydraulics.

[33]This Court will not address the issue of whether JWR was contributorily negligent since this Court finds that the economic-loss rule and the terms and conditions both preclude Plaintiff from recovering under a negligence claim.

[34]Defendants also argue that JWR's negligence claim is due to be dismissed based on the affirmative defense of lack of causal relationship.  (Docs. 66 & 70.)  Defendants may assert this affirmative defense if they can establish that there is no causal relationship between the defendants involvement in the product and its defective condition.  For example, if a defendant establishes that "he received a product already in a defective condition; he did not contribute to the defective condition; he had neither knowledge of the defective condition, nor an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer," defendant has met his burden of establishing a lack of causal relationship.  *Atkins v. Am. Motors Corp.*, 335 So. 2d 134, 143 (Ala. 1976); *see also Townsend v. Gen. Motors Corp.*, 642 So. 2d 411, 424 (Ala. 1994).  This affirmative defense is generally used in response to a products liability or AEMLD

1.     Economic-Loss Rule.

Under Alabama law, it is "widely recognized that one cannot recover in tort for damage to the product itself."  *See Dairyland Ins. Co. v. Gen. Motors Corp.*, 549 So. 2d 44, 46 (Ala. 1989); *see also Bay Lines, Inc. v. Stoughton Trailers, Inc.*, 838 So. 2d 1013, 1019 (Ala. 2002); *Ex parte Grand Manor, Inc.*, 778 So. 2d 173, 178-79 (Ala. 2000). In a commercial setting, a party "has no duty under . . . a negligence . . . theory to prevent a product from injuring itself." *East River Steamship Corp. v. TransAmerica Delaval, Inc.*, 476 U.S. 858, 871 (1986); *see also Lloyd Wood Coal Co. v. Clark Equip. Co.*, 543 So. 2d 671, 673 (Ala. 1989)(adopting the United States Supreme Court's reasoning, and holding that where there was no personal injury or property damage other than to the product itself, the plaintiff could not recover under a tort action).  Instead, an action for a defective product or damage to the product has been recognized as a contract action or a breach of warranty action.  *See Dairyland Ins. Co.*, 549 So. 2d at 46 (quoting C. GAMBLE & D. CORLEY, ALABAMA LAW OF DAMAGES § 32-8, 339 (1982)); *Lloyd Wood*

---

claim.  Since JWR has not asserted such claim, this Court will not address the "lack of causal relationship" argument.

*Coal Co.*, 543 So. 2d 671.

In this case, as to the negligence count, the defective or malfunctioning valves allegedly rendered JWR's longwall shields inoperable and caused damage to its mining operations. (Doc. 22 at ¶ 33.)  Plaintiff contends that its longwall shields were not able to operate, the mining operations were therefore suspended, and that JWR employees were put at a tremendous risk for injury due the negligence of Longwall.  *Id.* at ¶ 40. Plaintiff argues that the damages suffered as a result of Defendant's negligence includes the actual cost to repair and replace the defective leg POCVs and substantial damages due to the inability to continue its mining operations.  *Id.* at ¶ 41.  Since JWR's negligence claims are for damage to the valves and the mining operations, which constitute damage to the product itself, JWR's claims are governed by the economic-loss rule, indicating that JWR cannot recover under a tort theory of liability.  *See Bay Lines, Inc., Inc.*, 838 So. 2d at 1019; *Dairyland Ins. Co.*, 549 So. 2d at 46.

Plaintiff contends that the economic-loss rule does not apply to the case at hand for two reasons.  First, JWR alleges that it suffered damages not to the purchased product, the POCVs, but rather to the harvesting and

mining operations.  However, Alabama courts have held in similar cases, where the alleged damage was to the resulting product, that the claims were based on damage to the product itself and that the economic loss rule applied.  *See Harris Moran Seed Co., Inc. v. Phillips*, 949 So. 2d 916, 932-33 (Ala. Civ. App. 2006)(where the farmers alleged that the purchased product (the seeds) were used to produce another product (tomatoes) and that the negligence caused damage not to the "product itself" but to the resulting product, the court held that farmers were precluded from bringing a tort action since this was damage to the product itself); *Bay Lines, Inc.*, 838 So. 2d at 1020 (while Bay Lines claimed that defects in the panels caused damages in the form of loss of investment in the trailers and loss from the trailers, the court held that it "should refrain from permitting tort actions when the basis for the claims should properly be dealt with between the parties under the law of contracts").   Similarly, JWR contends that the damage caused from the use of the POCVs in the longwall shields  was not necessarily to the valves themselves, but rather to the resulting product–the mining and harvesting of coal.  Based on Alabama case law, JWR cannot assert its negligence claim since the damage was to the product itself, the

mining operations from the purchased valves.

In addition, Plaintiffs allege that the economic-loss rule does not apply because Defendants' negligence did cause physical injury, claiming that an employee was crushed in a hydraulic longwall shield and that he was injured as a result of Defendants' negligence.  (Doc. 71.)  However, JWR did not assert a claim for personal injuries in its complaint.  JWR only alleged damages in the form of the cost of repair and replacement of the POCVs and the loss of the ability to operate its mines.  JWR did contend that its employees were put at a risk of injury; however, it did not assert any claims for physical injury.  Also, JWR failed to present any evidence indicating that the valves caused the injury to the employee.

JWR's accident report of the alleged injury states that the employee was not trained to work with the valves, and that had he been doing the job he was trained to do, he would not have been injured.  (Jim Walter Resources Injury/Illness Investigation.)  The report did not indicate that the injury was a result of any problems with the valves, but rather, that the injuries were caused by negligence of the employee. *Id.*  Therefore, since JWR's damages do not include physical injury damages, the economic loss

rule is found to apply.

2.     Terms and Conditions.

In addition, Defendants' terms and conditions contain a limitation of remedies, which excludes Seller's tort liability.[35]  Since JWR's terms do not contain a conflicting term but rather are silent as to tort liability, this limitation of remedies constitutes part of the contract.  *Idaho Power Co.*, 596 F.2d at 928 (where the offer contained a provision excluding tort liability, and the acceptance was silent, court held that the disclaimer of tort liability was effective as to limit such liability).  Therefore, due to the disclaimer of tort liability in the contract,  JWR is precluded from recovering under a tort theory of liability.

For the foregoing reasons, summary judgment on JWR's negligence claim is granted in favor of Longwall and Hydraulics.   However, summary judgment is due to be denied as to Defendants' claim that JWR was contributorily negligent.

V.    Conclusion.

For the reasons stated above, defendant Hydraulics motion for

---

[35]The terms and conditions of Longwall and Hydraulics are identical.

summary judgment is due to be granted in all respects.  Defendant Longwall is entitled to summary judgment on Plaintiff's claim for negligence. Defendant Longwall's motion for summary judgment on Plaintiff's claims of breach of contract and breach of warranty is due to be denied as to Longwall's liability under these claims; however, Longwall's motion is granted in part to the extent that there will be no recovery for special, incidental, or consequential damages that may have been incurred by Plaintiff.  Therefore, the only claims remaining in this cause are Plaintiff's allegations of breach of contract and breach of warranty against Longwall. This Court will set up a telephone conference with the parties within ten days of this Opinion regarding the next course of action for this case. A separate order in conformity with this opinion will be entered.

Done this 16th day of January 2008.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671